## LEMUEL KEITH *versus* ELIJAH HOWARD.

In 1792, an act was passed, incorporating, by the name of the Congregational Parish in Easton, all inhabitants of that town "who now usually attend, and who shall hereafter usually attend public worship with the congregational society, and who shall cause their names to be entered and registered with the clerk of such society." The plaintiff was an inhabitant of the town, he usually attended public worship with the congregational society, and in 1809 he caused his name to be entered and registered with the clerk ; and he voted at the parish meetings and served in parish offices from time to time up to 1833, when the parish clerk, on the election of a moderator, refused his vote. For about a year previous, the settled minister of the parish had been prevented, by a portion of his parishioners, from preaching in the parish meetinghouse, and during that period the plaintiff attended public worship with such minister in other houses, but he did not file with the parish clerk a *certificate of his having joined any other religious society. Held*, that he continued to be a member of the parish, and entitled to vote at the parish meetings, and that the clerk was liable to an action for refusing his vote.

A committee appointed to revise the list of members of the parish, reported a new list not containing the name of the plaintiff, which was accepted by a vote of the parish. *Held*, that these proceedings had no effect upon the rights of the plaintiff as a member of the parish.

UPON a case stated, it appeared, that this was an action of the case against the defendant, for rejecting the plaintiff's vote at a parish meeting of the Congregational Parish in Easton.

The parish was incorporated on the 7th of February, 1792, (1 Special Laws, 320,) and the act of incorporation provides, that " all inhabitants of the town of Easton, &c. who now usually attend, and who shall hereafter usually attend public worship, with the congregational society of the town of Easton, of which the Rev. William Reed is the present min ister, and who shall cause their names to be entered and registered with the clerk of such society," shall be made a corporation by the name of the Congregational Parish in Easton ; and any such person shall be held to be a member of the parish, until he shall signify in writing to the clerk, his intention to attend public worship with some other religious society, and shall actually discontinue his attendance on public worship with said congregational society.

At the time of the incorporation, the plaintiff resided in Easton, and usually attended public worship with the congregational society, of which Mr. Reed was minister. There is a list of the names of one hundred and nineteen persons, *on the*

parish book of records, headed, " A list of persons belonging
to the Congregational Parish in Easton, April 24, 1809."
The plaintiff caused his name to be entered and registered in
this list on the 24th of April, 1809, and it still continues
therein. He has always resided in Easton, and has voted in
meetings of the parish, and his vote has never been refused
when offered, until the 2d of September, 1833, the time men-
tioned in the declaration, when it was refused by the de-
fendant. The plaintiff had several times been an officer of
the parish before that day, and was possessed of property in
the parish liable to be taxed, sufficient to qualify him to be a
voter.

On the 2d of September, 1833, a meeting of the parish
having been notified for transacting parish affairs, and the de-
fendant being clerk of the parish, and the parishioners being
assembled for transacting business, the defendant called on the
parishioners to bring in their votes for a moderator of the meet-
ing ; which they did, and the plaintiff offered his vote, which
the defendant refused to receive.

The facts in the preceding case of *Sheldon* v. *The Congre-
gational Parish in Easton*, so far as they are material to the
decision of the present case, are to be taken as facts in the
present case.

After Mr. Sheldon was prevented from preaching in the
parish meetinghouse, and preached in other houses, the plain-
tiff, with his family, usually attended on his preaching, and be-
came the owner of a pew in the new meetinghouse in that case
mentioned.

On the 1st of April, 1833, the parish voted that the trustees
be a committee to revise and correct the list of parishioners.
In the record of the meeting on the 2d of September, 1833,
it is entered, that the trustees made a report in writing, includ-
ing a revised list of the parishioners, which was read and ac-
cepted. The plaintiff's name was not contained in this list.
The defendant read this list at the opening of the meeting, and
before calling on the parishioners to bring in their votes for a
moderator.

If upon these facts the Court should be of opinion, that the
plaintiff was entitled to recover, the defendant was to be de-

Keith
v.
Howard.

Oct. 22d,
1835, at
Plymouth.

April term
1836, at
Taunton.

faulted and judgment to be entered for the plaintiff for one dollar damage, and costs of suit.

*Eddy, Warren* and *Colby*, for the plaintiff, cited *Lincoln* v. *Hapgood*, 11 Mass. R. 350 ; *Bridge* v. *Lincoln*, 14 Mass. R. 367 ; *Dodds* v. *Henry*, 9 Mass. R. 262 ; *Jewett* v. *Burroughs*, 15 Mass. R. 469.

*Dexter* and *Lothrop*, for the defendant.

MORTON J. delivered the opinion of the Court. The clerk of a town or parish is authorized and required by law to preside over all meetings in which a moderator is to be chosen, during the election of that officer. *St.* 1811, *c.* 9, § 2, and 1817, *c.* 184, § 2 ; *Dodds* v. *Henry*, 9 Mass. R. 262. And while thus presiding, he is invested with the same powers, governed by the same rules, and subject to the same responsibilities, as other presiding officers. Every qualified voter has a right to vote for moderator, and if the clerk refuse to receive his vote, it is an infringement of his elective franchise, for which he may maintain an action. The only question, therefore, in the present case, is whether the plaintiff was a member of the parish or religious society ; for if so, it is admitted that he was qualified to vote.

The Congregational Parish in Easton was established February 7th, 1792. It was formed from and intended to be the successor of the original first parish, including the whole town. The act creating it incorporated " all inhabitants of the town of Easton, who now usually attend, and who shall hereafter usually attend, public worship with the congregational society," " and who shall cause their names to be entered and registered with the clerk of such society." The statute prescribes the terms upon which persons may become members of the society and the mode of joining it. The plaintiff complied with the terms. He was an inhabitant of Easton, he usually attended public worship with the congregational society, and he caused his name to be entered and registered by the clerk, and it now remains upon the records of the parish. He thus became a member of the corporation. And he exercised his corporate rights by voting in parish meetings and serving in parish offices from time to time, without objection or question, up to the time of the rejection of his vote by the defendant.

Having once joined the parish, he of course would continue to be a member until he should voluntarily withdraw or be legally expelled. He never withdrew. This could only be done by becoming a member of some other religious society and filing a certificate thereof with the clerk of the town or of the parish which he left, according to the act of incorporation, or the statutes of 1811, *c.* 6, § 2, or 1823, *c.* 106, § 2. *Oakes* v. *Hill*, 10 Pick. 333. So far from attempting or intending to do this, the plaintiff always claimed and exercised all his parochial rights and continued to attend public worship with the settled clergyman of the parish. *Sheldon* v. *The Congregational Parish in Easton*, *ante*, *p.* 281.

Nor was he ever expelled. The corporation had no power of expulsion. They had not even the power to determine who might become members. It was essentially a territorial parish. The peculiarities contained in its charter were unimportant. Every inhabitant of Easton had a right to become a member without and in spite of the volition or action of the parish. All who chose to worship with them and to present " their names to be entered and registered by the clerk," might become members.

The parish never assumed or undertook to exercise the power of expulsion. They appointed " the trustees a committee to revise and correct the list of parishioners." The trustees accordingly prepared a report, omitting the plaintiff's name, which was submitted to the meeting of September 2d, 1833. But this can be no justification or excuse for the defendant. It had not been accepted by the parish, when the plaintiff's vote was offered and rejected. The report of a committee is like the motion of an individual, a mere proposal to the body to whom it is made, for their acceptance or rejection. It derives all its force from their adoption of it.

But the rights of the plaintiff could not be affected by the action of the parish ; and the report of the committee, so far as it related to his membership, was as powerless after its adoption as it was before. The parish, for their information, might employ a committee to inquire and ascertain who belonged to the parish. But it was an inquiry into existing facts, which they had no power to change. And the report of the

committee on the action of the corporation, could neither make new members nor exclude old ones.

The selectmen of towns are required to provide a correct list of all persons qualified to vote for town officers. *St.* 1822, *c.* 104, § 2. This is to be the guide of the moderator in relation to the qualification of voters, and he is protected from all liability " for refusing the vote of any person whose name is not on the said list." *St.* 1822, *c.* 104, § 5. And as the town clerk, while presiding, has all the powers and all the duties of a moderator, (*St.* 1811, *c.* 9, § 2,) he would seem, by an equitable and liberal construction of the statute, though not named in it, to come within its protection. But these provisions have never been extended to parishes. They, being smaller bodies, have not been supposed to need them. No lists of voters are required, and no officers are authorized to make any such lists. The presiding officers in parish meetings, must therefore determine, at their peril, upon the qualifications of those who claim a right to vote.

In the present case we have no doubt that the plaintiff was one of the original members of the corporation ; that his parochial relation has never been dissolved ; that he is still subject to taxation, and has a right to vote ; and that the defendant is liable for having rejected his vote.

*Defendant defaulted.*